IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR-10-11-D |
| | ) | (No. CIV-13-208-D) |
| CARRI O. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court is Defendant Carri O. Adams' *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. No. 244], which is accompanied by a Memorandum in Support [Doc. No. 245] explaining her claims. Ms. Adams seeks relief from a conviction of multiple counts of wire fraud based on allegations of ineffective assistance of trial counsel. The government has filed a response [Doc. No. 252], supported by copies of trial exhibits and portions of the trial transcript. Ms. Adams has filed a reply brief, denominated "Motion in Traverse" [Doc. No. 256]. For reasons that follow, the Court finds the existing record shows Ms. Adams is not entitled to relief.

**A.    Factual and Procedural Background**

On May 18, 2010, a jury convicted Ms. Adams and co-defendant Wallace Laverne Lawrence, III of seven counts of wire fraud in violation of 18 U.S.C. § 1343.[1] These offenses were part of a fraudulent scheme in which victims were led to believe that consumer

---

[1] Mr. Lawrence was convicted of additional counts of access device fraud and aggravated identity theft based on conduct in which Ms. Adams was not involved.

debts, such as utility bills or car payments, would be paid or forgiven as part of a government or charitable debt-relief program, if they made cash payments in amounts equal to half of their outstanding debts. The victims' bills were fraudulently paid using stolen credit card or bank account information, and the cash payments were collected before the unauthorized charges were discovered and reversed. Interstate wire communications were used to carry out the scheme through internet ads posted on www.craigslist.com. Ms. Adams testified at trial that she unwittingly participated in the scheme by collecting cash payments and posting internet ads. Ms. Adams' defense was that she, like the victims, was duped into believing there was a legitimate debt-forgiveness program, and that Mr. Lawrence "portrayed to her, the ruse of a legitimate job" as a courier of cash payments. *See* Def.'s Mem. [Doc. No. 245], p.3.[2] Other trial witnesses included two participants in the scheme (co-defendant Sandra Acuna and cooperating witness Carrie DeLaPorte), numerous victims, and a local television news reporter who investigated and broadcast a report about the scheme. The jury convicted Ms. Adams of all charges against her in the Indictment, and she was sentenced to concurrent 18-month terms of imprisonment.[3]

Regarding Ms. Adams' legal representation, her first appointed attorney, Joe Wells, was permitted to withdraw less than three weeks before the April 2010 trial setting after a

---

[2] Citations to Ms. Adams' briefs utilize page numbers assigned by the Court's CM/ECF system.

[3] Although Ms. Adams has discharged her prison sentence and completed her term of supervised release, she remains subject to a restitution order and other collateral consequences of her conviction. Thus, her Motion is not moot. *See United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000); *see also Sibron v. New York*, 392 U.S. 40, 55 (1968).

hearing regarding Ms. Adams' dissatisfaction with the representation.[4] The Court later continued the trial to the May 2010 jury trial docket and appointed substitute counsel, Bill Zuhdi. Upon a motion filed by Mr. Zuhdi, the Court extended the deadline for Ms. Adams to file pretrial motions. Mr. Zuhdi timely filed multiple motions, as well as proposed jury instructions and voir dire.[5] Mr. Zuhdi also represented Ms. Adams at a hearing on two motions to suppress evidence that Mr. Wells had filed, and a *James*[6] hearing to determine the admissibility of certain out-of-court statements. The Court denied the motions to suppress, but determined that only two of the out-of-court statements at issue were admissible at trial. *See* 5/3/10 Order [Doc. No. 104]; 5/10/10 Order [Doc. No. 128].

Before trial, Mr. Zuhdi submitted under seal an *ex parte* application for the issuance and service of five trial subpoenas [Doc. No. 130], which was granted. The subpoenas were issued [Doc. Nos. 135 & 136], and two of the five witnesses were called at trial to testify in Ms. Adams' defense. In addition to witnesses, Mr Zuhdi presented documentary evidence, which was admitted. From the Court's perspective, Mr. Zuhdi capably represented Ms. Adams throughout the course of the seven-day jury trial.

---

[4] The Court determined at the time that "a serious conflict in the attorney-client relationship has developed that warrants a substitution of counsel" because "[a]lthough there has not been a complete breakdown in communications, . . . the current relationship is such that effective communication . . . is not possible and Mr. Wells' ability to provide effective legal representation" was impaired. *See* Order 3/24/10 [Doc. No. 67].

[5] The motions were mostly denied, but one motion in limine was granted in part. *See* 4/30/10 Order [Doc. No. 97]; 5/3/10 Order [Doc. No. 114]; 5/7/10 Orders [Doc. Nos. 122, 123 & 124].

[6] *United States v. James*, 590 F.2d 575 (5th Cir. 1979).

Ms. Adams was represented on direct appeal by other appointed counsel, although Mr. Zuhdi filed a timely notice of appeal on her behalf. After obtaining an extension of time to file the opening brief, Ms. Adams' appellate counsel filed an *Anders*[7] brief and a motion to withdraw, certifying that he had not found any non-frivolous grounds for appeal. The court of appeals exercised its independent duty to examine the record and determine whether Ms. Adams' claims were "wholly frivolous." *See United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). Similarly finding no non-frivolous issues, and noting any claim of ineffective assistance of counsel was "reserved for collateral review," the court of appeals granted counsel's motion and dismissed the appeal. *See United States v. Adams*, 448 F. App'x 834, 836-37 (10th Cir. 2011).[8] Within one year of the deadline for filing a petition for a writ of certiorari, Ms. Adams filed the instant Motion, asserting four claims of ineffective assistance of trial counsel with respect to certain areas of allegedly deficient performance.

**B.     Standard of Decision**

The standard of decision governing these claims are well established:

> Ineffective assistance of counsel claims are . . . guided by the now familiar *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this test, a petitioner must show that "his trial counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*,

---

[7] *Anders v. California*, 386 U.S. 738 (1967).

[8] During the pendency of the appeal, Ms. Adams filed a § 2255 motion that this Court dismissed as premature, "without prejudice to refiling, if appropriate, after the court of appeals decides Ms. Adams' pending appeal." *See* 9/13/11 Order [Doc. No. 227], p.2.

4

> 12 F.3d 950, 955 (10th Cir.1993) (*quoting Strickland*, 466 U.S. at 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*United States v. Mora*, 293 F.3d 1213, 1217 (10th Cir. 2002); *see Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). The "two prongs [of *Strickland*] may be addressed in any order, and failure to satisfy either is dispositive." *Littlejohn v. Trammell*, 704 F.3d 817, 859 (10th Cir. 2013) (internal quotation omitted); *see Fields v. Gibson*, 277 F.3d 1203, 1216 (10th Cir. 2002) (same); *see also Strickland*, 466 U.S. at 697; *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000) ("ineffective assistance claim may be resolved on either performance or prejudice grounds alone") (internal quotation omitted).

To establish prejudice under the circumstances of this case, Ms. Adams must show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In assessing prejudice, the Court "looks at the totality of the evidence, not just the evidence helpful to the petitioner." *See Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999); *see also Strickland*, 466 U.S. at 695; *Hooks v. Workman*, 689 F.3d 1148, 1200 (10th Cir. 2012).

**C.    Discussion**

Liberally construing the Motion in light of Ms. Adams' *pro se* status, she asserts that trial counsel provided constitutionally ineffective assistance in four respects: 1) failure to investigate the law and assert a defense under *Skilling v. United States*, 561 U.S. 358 (2010); 2) failure to adequately investigate the facts of her case, prepare for trial, and subpoena

witnesses, as described more fully in her briefs and discussed *infra*; 3) failure to effectively cross-examine the government's witnesses; and 4) failure to move for a severance of the charges against her from the charges against Mr. Lawrence.[9]

### 1. Legal Investigation

Ms. Adams claims Mr. Zuhdi erred by not utilizing the Supreme Court's decision in *Skilling* in her defense. The decision was issued between the time of Ms. Adams' trial and her sentencing. Although she faults Mr. Zuhdi for the alleged error, her appellate counsel and the court of appeals also failed to raise any issue related to *Skilling* during the pendency of her case. This silence is unremarkable because, as explained by the government, *Skilling* was not implicated by the charges of the Indictment.

In *Skilling*, the former chief executive officer of Enron Corporation was convicted of conspiracy to commit "honest services" wire fraud, involving a fraudulent scheme as defined by 18 U.S.C. § 1346 to include "a scheme or artifice to deprive another of the intangible right of honest services." To resolve an unconstitutional vagueness challenge, the Supreme Court construed the statute narrowly and held "that § 1346 covers only bribery and kickback schemes." *Skilling*, 561 U.S. at 367.

The wire fraud charges against Ms. Adams did not involve a scheme to defraud victims of an intangible right to honest services. Ms. Adams received cash payments from

---

[9] Ms. Adams also makes a conclusory statement in her supporting Memorandum that counsel failed to challenge restitution as "inapplicable." *See* Def.'s Mem. Supp. [Doc. No. 245], p. 2. This unsupported assertion is insufficient to state a claim under § 2255. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("Although we must liberally construe Defendant's pro se petition, we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.") (citation omitted).

6

victims of the fraudulent scheme under the pretense of satisfying their outstanding debts, but instead, the money was taken by perpetrators of the scheme and used for their own financial benefit. The "honest services" statute was inapplicable to this case, and the holding of *Skilling* had no bearing on the wire fraud offenses of which Ms. Adams was convicted. Thus, Mr. Zuhdi did not err in failing to raise *Skilling* in Ms. Adams' defense, and any legal argument based on *Skilling* would not have altered the outcome of the case.

The Court therefore finds that Ms. Adams' claim of ineffective assistance based on trial counsel's failure to invoke *Skilling* lacks merit.

### 2. Factual Investigation and Trial Preparation

Ms. Adams claims Mr. Zuhdi failed to investigate facts relevant to her defense, was unprepared at trial to question witnesses and present pertinent evidence and arguments, and refused to subpoena or call witnesses whose testimony would have shown she was unaware of the fraudulent nature of the scheme and whose testimony could have been used to impeach her testifying co-defendant, Sandra Acuna. This claim is supported only by conclusory arguments in Ms. Adams' supporting Memorandum that she found it necessary to assist counsel during trial by informing him of facts pertinent to particular witnesses and providing questions for him to ask. According to Ms. Adams, "[c]ounsel was virtually clueless to the entire proceeding." *See* Def.'s Mem. Supp. [Doc. No. 245], p.5. She also argues that Mr. Zuhdi failed to interview or subpoena potential witnesses whose names she had provided

to him, and failed to prepare the two witnesses who were called so they could testify effectively. *Id.*[10]

Ms. Adams' contentions are refuted by the existing record. Responding to arguments by the government that her Motion does not identify any particular witness who was requested, she names in her reply brief five witnesses (other than Mr. Lawrence) whose names she allegedly provided to Mr. Zuhdi. *See* Mot. Traverse [Doc. No. 256] (hereafter, "Reply Br."), p.7. With one exception, Mr. Zuhdi obtained subpoenas for all of these witnesses; Ms. Adams' statements to the contrary are simply wrong. *See id.*, p.8. Ms. Adams includes in her list two witnesses who actually testified at trial. Although she takes credit for their attendance and her help in explaining what questions to ask, the record shows the testimony that Ms. Adams alleges was necessary to her defense was actually presented to the jury. Ms. Adams contends the failure to call other witnesses was due to a lack of planning and effort by Mr. Zuhdi, but she fails to explain what testimony the absent witnesses might have given and how it would have impacted the jury's credibility determination. In short, Ms. Adams lacks any factual support for her claim that Mr. Zuhdi was unprepared for trial and his lack of preparation prejudiced her defense.

The Court therefore finds that Ms. Adams' claim of ineffective assistance based on her counsel's lack of adequate trial preparation lacks merit.

---

[10] Ms. Adams also cites as an example of Mr. Zuhdi's alleged unpreparedness the fact that his wife "brought in legal documents such as exhibits, statements, retracted statements, etc." *See* Def.'s Mem. Supp. [Doc. No. 245], p.5. Ms. Adams is apparently unaware that Mr. Zuhdi's wife is a capable, experienced legal assistant who routinely assists him at trial with managing evidence and exhibits. The Court observed nothing unusual about her participation in the trial of this case.

### 3. Trial Performance

Ms. Adams claims that, in addition to a general lack of preparedness, Mr. Zuhdi performed deficiently during the trial by failing to cross-examine Ms. Acuna and Ms. DeLaPorte about inconsistences in their testimony, failing to cross-examine some government witnesses at all and to cross-examine others effectively, and by appearing at trial impaired by some medical condition or medication error that rendered him "incoherent" and "unable to function." *See* Def.'s Mem. Supp. [Doc. No. 245], p.6.

In response to Ms. Adams' allegations regarding cross-examination, the government points to instances in the trial record that refute her belief that Mr. Zuhdi made no effort to impeach the government's witnesses and that better questioning could have "reveal[ed] the perjury of these witnesses." *Id.* The government argues that Ms. Adams simply disagrees with the jury's credibility determinations. The government also challenges her claim that Mr. Zuhdi was impaired during the trial. The government states, correctly, that any such impairment would not have gone unnoticed by the Court.

Upon consideration of the trial record, including the entire transcript filed in connection with the direct appeal, the Court finds no constitutional deficiency in Mr. Zuhdi's performance. Ms. Adams argues generally that Mr. Zuhdi should have found some way to discredit the government's witnesses, particularly Ms. Acuna. However, Mr. Zuhdi's cross-examination of Ms. Acuna raised numerous issues of possible bias and impeachment. The credibility of Ms. Acuna, Ms. DeLaPorte, and other witnesses was squarely presented to the jury, and decided adversely to Ms. Adams and Mr. Lawrence. In fact, if jurors believed the

9

government's witnesses, as they obviously did, the evidence of Ms. Adams' guilt was overwhelming. The court of appeals expressly considered on direct appeal the sufficiency of the evidence to support Ms. Adams' conviction and found this to be a frivolous issue because "ample evidence demonstrated the existence of the fraudulent scheme and Adams's participation in it." *See United States v. Adams*, 448 F. App'x 834, 836 (10th Cir. 2011). The Court concurs in this assessment, and finds that Ms. Adams has neither shown deficient performance by Mr. Zuhdi nor prejudice to her defense by any trial error on his part.

The Court therefore finds that Ms. Adams' claim of ineffective assistance based on her counsel's allegedly deficient trial performance lacks merit.

### 4. Pretrial Procedure

Ms. Adams claims that Mr. Zuhdi should have moved before trial to sever her case from Mr. Lawrence's case. However, she fails to identify a sufficient basis for severance.

Ms. Adams states the "main issue" about a joint trial is that she was prevented from calling Mr. Lawrence as a witness. *See* Def.'s Mem. Supp. [Doc. No. 245], p.7. She contends he could have testified in her defense if the charges against them had been tried separately. This conclusory argument is based on sheer speculation.[11] Ms. Adams provides no factual basis to believe Mr. Lawrence would have waived his Fifth Amendment rights and testified at her trial, while electing not to testify on his own behalf. Ms. Adams also misapprehends the law governing her proposed motion.

---

[11] Ms. Adams makes a bare assertion that "Lawrence could have testified, willingly, or been subpoenaed." *See* Reply Br. [Doc. No. 256], p.4.

A motion to sever is governed by Fed. R. Crim. P. 14(a). It is well established that "[w]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see United States v. Jones*, 530 F.3d 1292, 1302 (10th Cir. 2008). "This rule expresses the 'preference in the federal system for joint trials of defendants who are indicted together.'" *United States v. Wardell*, 591 F.3d 1279, 1299 (10th Cir. 2009) (quoting *Zafiro*, 506 U.S. at 537); *see United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008). A defendant requesting a severance bears a heavy burden of showing real or actual prejudice. *See Wardell*, 591 F.3d at 1299; *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009).

This case presents no issue of improper joinder.[12] Ms. Adams has not identified a specific trial right that was compromised by a joint trial or a specific circumstance that posed a risk of an unreliable judgment. Ms. Adams makes only a vague assertion that she and Mr. Lawrence "had two different and unique defenses that should have been litigated separately." *See* Def.'s Mem. Supp. [Doc. No. 245], p.5. The case did not involve any antagonistic defenses, however, that might warrant severance. Defenses must be "so antagonistic that they are mutually exclusive," that is, "the conflict between the defendants' defenses must be such that the jury, in order to believe the core of one defense, must

---

[12] Rule 8(b) permits an indictment to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).

*necessarily* disbelieve the core of the other." *See United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008) (internal quotations omitted) (emphasis added in *Jones*).  Further, the prosecution in this case was based on an aiding and abetting theory of liability, and used the same witnesses and evidence to prove the seven wire fraud charges against Ms. Adams and Mr. Lawrence.  Their joint trial resulted in a substantial savings of judicial and prosecutorial resources, and if the issue had been presented by a timely motion to sever, the Court would have denied the motion.

The Court therefore finds that Ms. Adams' claim of ineffective assistance of trial counsel based on a failure to move for severance lacks merit.

IT IS THEREFORE ORDERED that Defendant Adams' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. No. 244] is DENIED.[13]  Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a movant.  A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

---

[13] No evidentiary hearing is needed where, as here, the existing record conclusively shows the defendant is not entitled to relief. *See United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996); 28 U.S.C. § 2255(b).

*Cockrell*, 537 U.S. 322, 327 (2003); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, the Court finds this standard is not met in this case. Therefore, a COA is denied, and the denial shall be included in the judgment.

IT IS SO ORDERED this 8th day of March, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE